A.P. *et al.*, Indiv. and as Parents and Next Friends of Their Minor Children and Adult Children, Plaintiffs-Appellees, v. M.E.E. *et al.*, Defendants-Appellees (The Tribune Company, Intervenor-Appellant).—M.E.E. *et al.*, Petitioners-Appellees, v. MINOR BENEFICIARIES *et al.*, Respondents-Appellees (The Tribune Company, Intervenor-Appellant).

First District (6th Division) Nos. 1—04—0994, 1—04—0995 cons.

Opinion filed December 30, 2004.

Kenneth E. Kraus and Jason M. Rosenthal, both of Schopf & Weiss, L.L.P., of Chicago, for appellant.

John J. Jiganti, guardian *ad litem*, John G. Moore, Theodore A. Sinars, and Leila T. Francis, all of Madden, Jiganti, Moore & Sinars, L.L.P., of Chicago, for appellees unborn beneficiaries.

Janice R. Forde, guardian *ad litem*, and Kevin M. Forde, both of Kevin M. Forde, Ltd., of Chicago, for appellees minor beneficiaries.

William R. Quinlan, Michael T. Beirne, Brian J. Alesia, and Jeanah Park, all of Quinlan & Carroll, Ltd., William J. Harte, of William J. Harte, Ltd., Richard J. Prendergast, of Richard J. Prendergast, Ltd., and Lowell E. Sachnoff, Michael D. Richman, and Michael R. Lieber, all of Sachnoff & Weaver, Ltd., all of Chicago, for appellees M.E.E., T.J.P., and A.R.W.

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

The Chicago Tribune (Tribune) appeals the denial of its motions to unseal documents and the court files in case Nos. 02 CH 16157 and 03 CH 13908, arguing the files are public under the common law, the Clerks of Courts Act (705 ILCS 105/16(6) (West 2002)), and the first amendment. The sealed case files involve the issue of whether certain minor and unborn children of the Pritzker family should be joined to a private, confidential settlement agreement already negotiated and signed by adult family members (the Family Agreement). The trial court allowed the parties to file their complaints under seal and later entered an agreed protective order that maintained confidentiality of all documents filed with the court and required the parties to file all documents under seal. Subsequently, the Tribune was allowed to intervene for the limited purpose of challenging the sealing of the court files, but its motions to unseal were denied, precipitating this appeal.

The order denying the Tribune's motions to unseal was in the nature of injunctive relief, and, therefore, this court possesses the

necessary jurisdiction to entertain the Tribune's interlocutory appeal. 188 Ill. 2d R. 307(a)(1); *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 221-22 (2000).

In this consolidated appeal, we reverse the trial court's orders sealing the court files, return the circuit court record to the trial court in its sealed condition, and remand the cause for further proceedings consistent with this opinion.

## I. BACKGROUND

In 2001, members of the Pritzker family entered the Family Agreement, which was designed to avoid litigation with respect to certain grievances and settle certain of the family's personal and financial affairs. The Family Agreement was not the product of litigation or any other public process.

In September 2002, petitioners M.E.E., T.J.P., and A.R.W., trustees of multiple Pritzker family trusts, filed a verified petition for declaratory relief, seeking, in accordance with section 19—8 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/19—8 (West 2002)), the entry of an order declaring that the Family Agreement was in the best interests of respondents, minor and unborn beneficiaries. The Family Agreement was not attached to the petition but would be provided to the court for *in camera* review and to any guardians *ad litem* appointed by the court after the entry of a protective order.

Petitioners simultaneously filed an emergency motion for leave to file the petition under seal, contending it contained private, detailed information regarding the family trusts and business units, including specific plans and strategies for certain business units. Further, the petitioners contended that public disclosure of the terms of the petition would have an adverse effect on the family members and businesses, that public disclosure at this time might expose the parties' interests to significant harm, and that by sealing the record, confidential family business information would be protected from disclosure to the public at large. The trial court granted petitioners' motion, ordering that the petition and "all further pleadings in this matter shall be filed under seal pending further order" of the court. The trial court also granted the motion for appointment of guardians *ad litem* for the minor and unborn beneficiaries.

In November 2002, the trial court granted the parties' agreed protective order to, *inter alia*: (1) maintain confidentiality of all documents produced by petitioners to respondents, all briefs, memoranda or any writings filed with the court and any exhibits thereto, and all discovery materials and deposition transcripts; and (2) file under seal "all documents, discovery responses and deposition transcripts filed with the Court and any pleading or other paper."

In January 2003, the trial court granted the motion of the guardians *ad litem* to file their joint response to the petition and ordered that "[a]ll pleadings and documents shall be filed under seal until further order of the Court."

In June 2003, the court granted petitioners' motion to file an amended verified petition for declaratory relief, which sought to clarify issues raised in the original petition. According to the amended petition, the Family Agreement not only resolved disputes about the past administration of the trusts, but also established a new administrative structure, which was intended to minimize the possibility that disputes would arise again in the future and to avoid the risks and costs of public litigation. The trustees and adult beneficiaries determined that the resolution effected by the Family Agreement was in the best interests of all trust beneficiaries, but noted that such determination might not be conclusive if the minor and unborn beneficiaries could, years hence, raise their own claims against the trustees. Although the minor and unborn beneficiaries lacked the legal capacity to join the Family Agreement on their own, they could be joined by court decree, which was what petitioners sought in the present suit. According to the amended petition, copies of the Family Agreement were provided to the court under seal and delivered to the guardians *ad litem*. The Family Agreement was incorporated in the amended petition by reference without being attached thereto; however, a schedule of the Family Agreement was attached to the amended petition as exhibit A.

In June 2003, certain adult beneficiary signatories to the Family Agreement and their adult children moved to intervene in case No. 02 CH 16157. The trial court subsequently granted that motion.

In August 2003, certain adult and minor trust beneficiaries filed a complaint (No. 03 CH 13908) solely to prevent the passage of time from barring their claims against defendants (trustees and others), but with the expectation that those claims would be extinguished by the court's approval of the Family Agreement in related case No. 02 CH 16157. Those plaintiffs filed an emergency motion for leave to file the complaint under seal so as not to undermine the purposes of the court's seal in No. 02 CH 16157. Plaintiffs argued that allowing the complaint to be filed under seal and sealing the record as long as the Family Agreement remained in effect would preserve the privacy and confidentiality of the Family Agreement and proceedings surrounding it, and preserve and protect both familial relationships and the interests of various family businesses. The trial court granted plaintiffs' motion to seal and ordered that the complaint and all further pleadings be filed under seal pending further order of the court. In February 2004, the court entered an agreed order voluntarily dismissing case No. 03 CH 13908 without prejudice.

In February 2004, the Tribune filed petitions to intervene in both cases and motions to unseal the court files. The trial court granted the Tribune leave to intervene as a matter of right for the limited purpose of petitioning the court to unseal the court files. The trial court orally required the Tribune to file its briefs under seal and denied the Tribune's oral request for a copy of either the papers supporting the motion to seal the files or the orders sealing the entire files. The Tribune filed a motion for leave to file its briefs publicly and for copies of the briefs and court orders concerning sealing the files. The trial court orally denied that motion on March 9, 2004. After briefing and oral argument, the court issued on March 19, 2004, a memorandum opinion and order denying the Tribune's motion to unseal the court files. The Tribune appealed both the March 9 and March 19, 2004, orders.

## II. ANALYSIS

### A. Timeliness of Appeal

■ Appellees contend the Tribune failed to timely appeal the trial court's March 9, 2004, oral order within 30 days where the Tribune filed its notice of interlocutory appeal April 14, 2004. Appellees argue the Tribune should not "bootstrap" the appeal of its motion to file public papers and for copies of the briefs and court orders concerning sealing of the files onto the "unrelated" motion to unseal the court files. We disagree. The March 9 oral ruling was directly related to the trial court's March 19, 2004, written order keeping the trial court files sealed. If the trial court unsealed the files on March 19, the March 9 ruling would have been overturned and the briefs and orders relating to the earlier sealing would have been made public. The March 9 oral ruling became final and appealable when the related March 19 order was entered denying the Tribune's motion to unseal the files. Thus, the Tribune timely appealed the trial court's March 9 and March 19, 2004, orders.

Moreover, as discussed below, we find that the trial court abused it discretion by requiring the Tribune to file its briefs, which challenged the seal, under seal; by sealing the court's original orders sealing the files; and by sealing the appellees' motions for leave to file all documents under seal.

### B. Unsealing of Court Files

#### 1. Presumption of Public Access

■ Judicial proceedings in the United States are open to the public—in criminal cases by constitutional command, and in civil cases by force of tradition. *Press-Enterprise Co. v. Superior Court*, 478

U.S. 1, 10, 92 L. Ed. 2d 1, 11, 106 S. Ct. 2735, 2741 (1986); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-99, 55 L. Ed. 2d 570, 579-80, 98 S. Ct. 1306, 1311-13 (1978). Certain jurisdictions have recognized a constitutional right of access to civil court files and records. See, *e.g.*, *In re Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984) (determining that the policy reasons for granting public access to criminal proceedings also applied to civil cases); *Skolnick*, 191 Ill. 2d at 230-32 (noting parallel rights of access to court records embodied in common law and the first amendment). An order denying a motion to unseal a court file or document is reviewed for an abuse of discretion, regardless of whether a purported right of access is based on the common law or the first amendment. *Skolnick*, 191 Ill. 2d at 231-33.

The United States Supreme Court acknowledged the existence of a common law presumption that allows the public to " 'inspect and copy public records and documents, including judicial records and documents.' " *Skolnick*, 191 Ill. 2d at 230, quoting *Nixon*, 435 U.S. at 597, 55 L. Ed. 2d at 579, 98 S. Ct. at 1312. The common law right of access to court records is essential to the proper functioning of a democracy; it ensures the public's ability to monitor the functioning of their courts and to form educated and knowledgeable opinions about their judicial system. *Skolnick*, 191 Ill. 2d at 230. The legislature codified the public's right to review judicial records in section 16(6) of the Clerks of Courts Act, which provides:

> "All records, dockets and books required by law to be kept by such clerks shall be deemed public records, and shall at all times be open to inspection without fee or reward, and all persons shall have free access for inspection and examination to such records, docket and books, and also to all papers on file in the different clerks' offices and shall have the right to take memoranda and abstracts thereto." 705 ILCS 105/16(6) (West 2002).

*Skolnick*, 191 Ill. 2d at 231. However, the common law right of access is not absolute; every court has supervisory power over its own records and files, and access may be denied where court files might become a vehicle for improper purposes. *Skolnick*, 191 Ill. 2d at 231. The right to access, however, may not be evaded by the wholesale sealing of court files; the court must be sensitive to the rights of the public in determining whether any particular document or class of documents is appropriately filed under seal. *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989).

■ The parallel right of access to court records embodied in the first amendment to the United States Constitution presumes a right to inspect where (1) court records have historically been open to the

public and (2) access would further the court proceeding at issue. *Skolnick*, 191 Ill. 2d at 232; see also *Press-Enterprise Co.*, 478 U.S. at 8, 92 L. Ed. 2d at 10, 106 S. Ct. at 2740 (explaining the second prong of this test as "whether public access plays a significant positive role in the functioning of the particular process in question"). The presumption of access can be rebutted by demonstrating that suppression "is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 78 L. Ed. 2d 629, 638, 104 S. Ct. 819, 824 (1984); *Skolnick*, 191 Ill. 2d at 232-33.

■ Whether we proceed under the common law or constitutional standards, the documents in this case became part of the court file once the trial court granted leave to file the pleading. At that point, the presumption of a right of public access to the filed documents attached. *Skolnick*, 191 Ill. 2d at 232.

## 2. Review of the Trial Court's Orders

The record indicates that the trial court merely acquiesced with the parties' requests to file all their pleadings and documents under seal. The initial orders allowing the parties to file under seal do not contain specific findings supporting the seal and do not indicate that the trial court conducted an *in camera* review prior to issuing those orders. Similarly, the broad protective order, which was drafted by the parties and sealed all documents, pleadings and "other paper" filed with the court, is devoid of any reference to an *in camera* review or specific findings regarding confidentiality. The trial judge himself did not conclude that legitimate interests in confidentiality required every part of the file to be confidential—at least he did not explain why secrecy was vital. The parties agreed on a broad confidentiality order, and the trial judge went along without an independent discussion of the need for or propriety of restrictions on the public's access. See *Pepsico, Inc. v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995). The judge, as the primary representative of the public interest in the judicial process, should not rubber-stamp a stipulation to seal a record. *Citizens First National Bank of Princeton v. Cincinnati Insurance Co.*, 178 F.3d 943, 945 (7th Cir. 1999).

The requests seeking the orders to seal were not accompanied by an affidavit to support the very general conclusory assertions that a seal was necessary to protect confidential family business information. *Cf. In re Reporters Committee for Freedom of the Press*, 773 F.2d 1325, 1326 (D.C. Cir. 1985) (party supported request for a protective order with an affidavit describing in general terms the negative effect disclosure would have on its business and competitive position in ship-

ping, and that it would be impractical to go through documents individually during the discovery process to determine whether they contained any confidential information); *May Centers, Inc. v. S.G. Adams Printing & Stationery Co.*, 153 Ill. App. 3d 1018, 1020 (1987) (shopping center offered testimony to support the opinion it would sustain financial damages from disclosure of pretrial discovery information regarding the nature of tenants' share of expenses for maintaining common areas); *In re Estate of Hearst*, 67 Cal. App. 3d 777, 781, 136 Cal. Rptr. 821, 822-23 (1977) (newspaper clippings reporting threats to lives of members of a wealthy and well-known family supported request whereby court could exercise its limited power to seal portions of court records on a temporary basis). We recognize that, in some instances, the content of a document itself may constitute sufficient evidence to justify a protective order. However, our review of the sealed record establishes that specific business plans and strategies, and private, detailed information regarding family trusts and businesses are not contained within the pages of each and every pleading, brief, document and paper filed with the circuit court.

After the Tribune intervened to contest the seal of the court files, the parties briefed the issue, and the trial court heard oral argument. In a written order, the trial court, without making specific findings, justified sealing the court files as an appropriate use of discretion to protect financial privacy and the privacy of minors and families. The court stated that excising the names of minors would not protect them because their identities were otherwise ascertainable. The trial court, however, did not address the option of sealing portions of the record as opposed to all the files. Beyond the conclusory statements that courts may exercise discretion to protect family, minor and financial privacy, the trial court failed to further specify the basis for its conclusions or give findings tied to a document or class of documents to support the decision to seal the court files. *Cf. Dittrich v. Gibbs*, 31 Media L. Rep. 1570 (June 19, 2002) (Will County circuit court conducted an *in camera* review of all documents impounded in the court file; identified the contents of the sealed envelopes; and determined whether the names and identifiers of individuals would be redacted, and whether a document, exhibit or certain portions thereof would be unsealed or redacted).

A closure order should both articulate the privacy interest involved and be accompanied by a statement of reasons "specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise Co.*, 464 U.S. at 510, 78 L. Ed. 2d at 638, 104 S. Ct. at 824. We agree with the trial court's general propositions

regarding financial, minor, and family privacy, but without specific findings, we cannot adequately review whether the blanket application of those propositions justified sealing the court files in this case. Adequate findings relieve the appellate courts of having to grope through the record to determine whether some combination of credible evidentiary items could support some line of factual and legal conclusions that would support the trial court's ultimate decision.

Our own review of the sealed record establishes that the trial court abused its discretion by sealing the court files. The contents of the files do not justify the conclusion that release of any part of them would be highly detrimental to minor, family or financial privacy interests. Certainly, orders of the court are public documents and should not be kept under seal. Judicial opinions are not the litigants' property; they belong to the public, which underwrites the judicial system that produces them. *Pepsico, Inc.*, 46 F.3d at 31. Judges should accommodate the competing interests of any legitimate privacy concerns and public access by keeping the confidential matters themselves under seal and referring to them only indirectly in an opinion. Our review of the trial court's orders confirms that those orders in no way revealed any matter remotely confidential.

Furthermore, pleadings are not protected like much of the information that surfaces during pretrial discovery. The pleadings, motions and other papers filed with the court assume the presumption of public access. *Skolnick*, 191 Ill. 2d at 236. Because litigation is a public enterprise and consumes public resources, it follows that in all but the most extraordinary cases (like weighty national security matters) complaints must be public. *Skolnick*, 191 Ill. 2d at 236-37. Allegations of a complaint are, by their very nature, likely to be critical in some fashion of the litigant named in the pleading, but such a basis of alleged harm is too commonplace to warrant sealing a pleading. *Skolnick*, 191 Ill. 2d at 235. The mere fact that a person may suffer embarrassment or damage to his reputation as a result of allegations in a pleading does not justify sealing a court file. *Skolnick*, 191 Ill. 2d at 234. See also *In re Krynicki*, 983 F.2d 74, 78 (7th Cir. 1992) (media interest in the events underlying the litigation was neither unusual nor deplorable, and judicial proceedings were not closed whenever the details were titillating, and open only when the facts were so boring that no one other than the parties cared about them).

The initial petition that invoked the trial court's jurisdiction did name the minor and adult beneficiaries but did not reveal any detailed business plans or private financial information. Although the subsequent course of the proceedings may have involved documents or reports that did reveal more detailed business plans or private

financial information, not every document contained in the record (which is not voluminous) was continually and intimately linked to minors' privacy, confidential business plans, or private financial information. Thus, it is possible as a practical matter to disclose information such as judicial determinations, the nature of the allegations and defenses contained in the pleadings, the identity of adult parties, matters of scheduling and appearances, and motions, briefs and argument concerning legal issues like subject matter jurisdiction and public access to court files, without disclosing information that may legitimately be kept confidential. See *In re Krynicki*, 983 F.2d at 77 (in rejecting a wealthy entrepreneur's request to seal a brief based on his concerns for family and financial privacy and the safety of his children, the court noted that he did not specify what additional information lurked in the sealed transcripts). We conclude that the trial court abused its discretion in sealing the entire court file in this matter.

### 3. Presumption of Access to Court Proceedings Involving Minors and Settlement

Appellees argue that the presumption of access does not apply to these proceedings, asserting that the issue here is unique to its facts and circumstances. Appellees state that this proceeding merely asks the court to determine whether a private settlement agreement is in the best interests of the minor and unborn beneficiaries; the court is not asked to adjudicate a dispute or interpret or reform documents.

Appellees fail to convince us that the presumption of access does not apply to the trial court proceedings at issue here. Section 19—8 of the Probate Act provides:

> "By leave of court *** a representative may compound or compromise any claim or any interest of the ward *** in any personal estate *** upon such terms as the court directs." 755 ILCS 5/19—8 (West 2002).

Courts of equity may authorize a compromise of a minor's litigation where the evidence shows that the compromise was proper and for the best interest of the minor. *Wolf v. Uhlemann*, 325 Ill. 165, 185 (1927). Great care should be exercised by the court, the minor being a ward of the court and entitled to its tenderest considerations. *Matthews v. Doner*, 292 Ill. 592, 595 (1920). The best interest determination must be made within the atmosphere of an adversarial process and within the rules of procedure and evidence. *Ott v. Little Company of Mary Hospital*, 273 Ill. App. 3d 563, 573 (1995). In making that determination, the court may review the parties' positions, analyze their potential strengths and weaknesses and estimate probabilities of liability and damage award. *Ott*, 273 Ill. App. 3d at 573.

The statute requires the government, through a judge, to act in this situation to protect the minors' best interests. What happens in the halls of government is presumptively open to public scrutiny. *In re Krynicki*, 983 F.2d at 75. Declaratory judgment actions, proceedings under the Probate Act, and judicial determinations regarding minors' best interests concern issues in which the public has an interest, but the public cannot monitor judicial performance adequately if entire court files of such proceedings are kept secret. Public scrutiny over the court system promotes community respect for the rule of law, provides a check on the activities of judges and litigants, and fosters more accurate fact-finding. *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994).

Appellees contend that this is not an adversarial lawsuit, but that assertion is not entirely accurate. The trustees' declaratory judgment action forces the minor and unborn beneficiaries to pursue their claims now. The trustees essentially seek a declaration that their past conduct in administering the trusts and their more recent decision to enter into and implement the Family Agreement cannot be subject to later litigation by the minor and unborn beneficiaries. Furthermore, section 19—8 of the Probate Act did not "thrust" the minor and unborn beneficiaries into the public court system. The parties determined the terms of their private settlement agreement, and the trustees apparently were not content to settle potential claims with the adult signatories of the Family Agreement without a release with respect to any claims the minors and unborns might have based on the trustees' conduct.

The appellees cite *Minneapolis Star & Tribune Co. v. Schumacher*, 392 N.W.2d 197 (Minn. 1986), to support their argument that there is no presumption of access in this proceeding. Their reliance on *Schumacher*, however, is misplaced; that case does not support the broad proposition that a court may seal an *entire* court file involving the settlement of a minor's litigation. In *Schumacher*, which involved wrongful death suits against an airline after a plane crash, the trial court sealed the court files after the litigants reached stipulated settlements. *Schumacher*, 392 N.W.2d at 200. Statutes mandated that the trial court approve the distribution of the settlement funds among the various heirs and approve the settlement figure in one suit involving a minor child. *Schumacher*, 392 N.W.2d at 200 n.1. The litigants sought the seal to prevent impeding the settlement of other suits involving the same air crash and to protect the families of the deceased crash victims from public intrusion into their private lives. *Schumacher*, 392 N.W.2d at 200. The families believed public access to the settlement distributions could result in thefts, exploitation, trespass, and physical injury to them. *Schumacher*, 392 N.W.2d at 200.

Thereafter,. the trial court denied the media's request for access to the files, and the media appealed. *Schumacher*, 392 N.W.2d at 201. However, while the appeal was pending, the trial court amended the original order, which sealed *entire* court files, to seal *only* the settlement and distribution papers and the transcripts of the settlement hearings. *Schumacher*, 392 N.W.2d at 201 n.3. The rest of the files were opened to the public. *Schumacher*, 392 N.W.2d at 201 n.3. Thus, the state supreme court reviewed (and affirmed) only the narrow issue of restricting access to the settlement documents or transcripts contained in the court files. *Schumacher*, 392 N.W.2d at 203. The state supreme court's decision to overlook the jurisdictional irregularity of the trial court's late order unsealing the court files (*Schumacher*, 393 N.W.2d at 201 n.3) actually undermines the assertions of appellees here that there is no presumption of access to the court files in the instant proceeding.

Certain appellees also argue that they have a significant vested interest in the privacy of the information already filed based on the trial court's protective order. They cite *Grove Fresh Distributors, Inc. v. John LaBatt Ltd.*, 888 F. Supp. 1427, 1432 (N.D. Ill. 1995), for the proposition that the trial court refused to unseal documents because parties may have relied on the existence of the seal in filing certain material. *Grove Fresh Distributors, Inc.*, however, does not support the proposition asserted by appellees. Rather, the trial judge recounted how, on appeal of his 1992 refusal to unseal documents based on the parties' reliance on a protective order, the appellate court remanded the matter to him in 1994 to elaborate for the record his rationale for the seal. *Grove Fresh Distributors, Inc.*, 888 F. Supp. at 1432-33. The trial court then engaged in a document-by-document review of all the sealed materials and, in 1995, ordered the file unsealed. *Grove Fresh Distributors, Inc.*, 888 F. Supp. at 1435. However, the trial court's *in camera* inspection revealed that continued confidentiality for some materials was appropriate, so the court ordered particularized redactions of certain words, phrases and names, while allowing public access to most of the documents. *Grove Fresh Distributors, Inc.*, 888 F. Supp. at 1435.

### 4. Rebutting the Presumption of Access

Having concluded that the presumption of access applies to this proceeding, we next weigh the public interest underlying that presumption against appellees' interest in confidentiality. Appellees have identified several factors on its side of the balance: (1) harm to minor children if media attention is cast on their financial situation; (2) harm to the parties and their business interests if sensitive

financial, trade, and business information is disclosed; (3) that unsealing the court file will jeopardize the Family Agreement and undermine the public policy favoring such agreements; and (4) that unsealing the record may have a chilling effect on the court's ability to review the most complete record possible if the trustees and parents limit the evidence they present to avoid compromising other interests by disclosure. As discussed above, these concerns may warrant the sealing of particular documents, but they do not justify the extreme action of sealing entire court files where not every document therein implicates these concerns.

The gist of appellees' arguments to maintain the seal of the court files centers on the desirability to prevent the disclosure of the details of the Family Agreement, a document apparently supplied to the trial court at some point but not contained in this record on review. Consequently, we cannot assess on review whether sealing the Family Agreement, or other similar documents and reports, would serve to protect the interests identified by the appellees.

Courts do consider the issue of public access to a document or class of documents separate and apart from public access to the court proceeding. In order to find that a document is subject to a first amendment right of access, the court must consider whether the document has historically been available to the public and whether public access would promote the proper functioning of the government agency producing or considering the document. Settlement agreements have not generally been available to the public and disclosure of the details of settlement agreements would not likely serve to help the trial court in making its best interests determination. See *Schumacher*, 392 N.W.2d at 205-06. An analysis under the common law right of access is somewhat different. If the Family Agreement is in the trial court's possession, the common law presumption of access attaches to this document. However, the court should carefully examine the agreement *in camera* in order to determine whether public disclosure of the material might result in it becoming a vehicle for improper purposes. Even then, however, the court should limit sealing orders to particular documents or portions thereof which are directly relevant to the legitimate interest in confidentiality.

We recognize that the public's particularized interest in the details contained within a settlement agreement is of a different order than the public's general interest in monitoring a court's ultimate determination that a settlement would be in a minor's best interest. The latter interest in the functioning of the trial court would ordinarily be insufficient to justify disclosure of legitimate confidential material; the public generally must be satisfied with the information disclosed

during open court hearings, in the open pleadings in the record, and in the court's public decision. However, we do not undertake to decide whether particular documents in the instant case should be maintained under seal. The determination regarding sealing a particular document (like a private settlement agreement involving minors) is properly left to the trial court in the first instance. This case will be remanded for that purpose. We emphasize that the circuit court record will be returned in its sealed condition so that the trial court may decide the most expeditious procedure to determine whether certain documents should be sealed or portions thereof redacted.

## 5. Vacating the Seal

In this case, vacating the seal presents the trial court with a peculiar set of problems. In reliance on the seal, the parties may have filed documents that otherwise would not be part of the public record. Where there are legitimate concerns of confidentiality, the burden should shift to the parties to itemize for the court's approval which documents have been introduced into the public court record. See *Grove Fresh Distributors, Inc.*, 24 F.3d at 898.

*In camera* review is an appropriate procedure and is routinely used when a judicial decision concerns information claimed to be covered by some rule of confidentiality or privilege. The procedure consists generally of two parts. First, the parties present a general outline of their respective positions supported by nonconfidential or nonprivileged evidence. Then, the parties identify the specific confidential or privileged evidence for *in camera* review. Courts are authorized to receive the contested data under seal, to review it privately, to decide the extent and nature of any lawful disclosure, and to tell the disappointed party that the claim of confidentiality has been sustained in whole or part, as the case may be. The court then preserves the *in camera* record for later appellate review.

We return the circuit court record to the trial court in its sealed condition so that the trial court may determine the most expeditious procedure for identifying and sealing particular documents.

## 6. The Identity of the Parties

The petitioners, adult intervenors, and minor beneficiaries are identified by name in the body of the petition for declaratory relief, but they have proceeded in this matter under designation by initials. The privilege of suing or defending under pseudonyms should not be assumed or granted automatically even if an opposing party does not object. The use of pseudonyms is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in

courts. 735 ILCS 5/2—401(e) (West 2002) ("Upon application and for good cause shown the parties may appear under fictitious names"). Section 2—401 of the Code of Civil Procedure, in providing that a "party shall set forth in the body of his or her pleading the names of all parties for and against whom relief is sought," represents the principle that civil judicial proceedings are to be conducted in public. 735 ILCS 5/2—401(c) (West 2002). Identifying the parties to a proceeding is an important dimension of publicness; the public has a right to know who is utilizing the courts that its tax dollars support. *Coe v. County of Cook*, 162 F.3d 491, 498 (7th Cir. 1998); *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997). There are exceptions; fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses.

In discussing the option of redacting the minors' names instead of sealing the court files, the trial court concluded that redaction would not protect them because their identities would still be ascertainable, but failed to state why that would be so. Perhaps their status as contingent trust beneficiaries would result in disclosure if the identities of their parents, the adult beneficiaries, were disclosed. We will not, however, speculate on possible arguments or unstated findings the trial court could have relied upon to support its sealing order. See *Skolnick*, 191 Ill. 2d at 237. In any event, redacting the names of the adult and minor beneficiaries could serve to protect the minors' privacy interests without resorting to the overly broad measure of sealing entire documents or concealing the identities of other adult parties. On remand, the trial court may determine that protection of the minor and unborn beneficiaries may warrant the use of initials or pseudonyms by the minor and adult beneficiaries.

## III. CONCLUSION

We hold that the trial court abused its discretion by sealing the entire court file. We reverse the orders of the trial court sealing the court files and remand this cause and return the sealed circuit court record for proceedings consistent with this opinion.

Reversed and remanded with directions.

McNULTY and O'MARA FROSSARD, JJ., concur.